UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
RHONDA WILLIAMS,

                            Plaintiff,

                 -against-

CITY OF NEW YORK, Police Detective
RICARDO BOCACHICA, Shield No. 000919,
Police Detective JOSH KAVANEY, Shield No.
370, Police Detective ANTHONY DISIMONE,
Shield No. 340, Police Sergeant PATRICIO
OVANDO, Police Officer UCO, Shield # 218,
Police Detective VERDEJO (f/n/u), Police
Officers JOHN/JANE DOES 1-5, individually,

                            Defendants.
------------------------------------------------------------------ x

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiff Rhonda Williams's ("Ms. Williams") rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). The incident in question took place in this District, specifically Bronx County.

## JURY DEMAND

5. Ms. Williams demands a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6. Ms. Williams is a resident of Bronx County and this incident occurred in Bronx County.

7. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant City of New York maintains the New York City Police Department (hereinafter "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

9. Defendant NYPD Detective Ricardo Bocachica, Shield No. 000919, Defendant NYPD Detective Josh Kavaney, Defendant NYPD Detective Anthony Disimone, Defendant NYPD Sergeant Patricio Ovando, Defendant NYPD Officer UCO, Shield No. 218, Defendant NYPD Detective Verdejo, and Defendant NYPD

2

John/Jane Doe Officers, at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and according to their official duties. Individual Defendants are sued in their individual capacities.

10. That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11. Each and all of the acts of the Individual Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

12. Ms. Williams is a Bronx County resident. She is presently fifty-five years old and works with individuals who have developmental disabilities in an assisted-living home.

13. On September 10, 2013, Ms. Williams was walking near her home when she ran into a female acquaintance. Ms. Williams knew the female acquaintance by face from the neighborhood, but not by name. When Ms. Williams ran into the female acquaintance (hereinafter "Jane Doe"), Jane Doe was with a male companion.

Ms. Williams did not know the male companion at all, by sight or otherwise.

14. On information and belief, Jane Doe's male companion was Defendant UC 218, and the male companion will hereinafter be referred to as such.

15. Ms. Williams continued walking in the same direction as Jane Doe and Defendant UC 218 and the three individuals exchanged generic pleasantries. As the group passed 1125 Morris Avenue, there were a number of people hanging out in the yard around a foosball or air hockey table, and Jane Doe said that she knew one of the people and suggested the group say hello. Jane Doe and Defendant UC 218 went to say hello to Jane Doe's friend, while Ms. Williams engaged in small talk with another guest she knew in passing who she saw at the gathering.

16. When Ms. Williams saw that Jane Doe was leaving, Ms. Williams took that as her opportunity to say goodbye to the man with whom she was chatting, and Ms. Williams left with her. About a block-and-a-half away, Defendants converged upon Jane Doe and Ms. Williams and arrested them. On information and belief, Defendants Bocachica, Kavaney, Disimone and Ovando were part of this group.

17. Defendants loaded Jane Doe and Ms. Williams into a hot, windowless police van. Before transporting the women to the precinct to be processed, Defendants took them along as they performed other duties.

18. Ms. Williams was very confused and frightened while all of this was happening, as Defendants refused to answer why they were arresting her.

19. Later, Ms. Williams learned that Defendant UC 218 alleged that Ms. Williams has helped Defendant UC 218 to buy marijuana at 1125 Morris Avenue by steering him to a man, S.E., who in turn steered Defendant UC 218 to yet another man from whom Defendant UC 218 bought marijuana using pre-recorded buy money ("PRBM").

20. After Defendants arrested Ms. Williams and Jane Doe, they went back to 1125 Morris Avenue and arrested S.E. Ms. Williams not know S.E. Furthermore, S.E. was not the man with whom Ms. Williams had chatted.

21. On information and belief, Defendants Bocachica, Kavaney, Disimone, Ovando and Verdejo had been directly involved in the alleged marijuana operation into which Ms. Williams had walked unawares on the day of the incident and either unreasonably falsely stated that Ms. Williams had been involved when what they knew would not permit that inference and/or failed to intervene when other Individual Defendants made such false statements and unreasonable inferences.

22. Based upon Defendant UC 218's false allegations against Ms. Williams that she had steered him to S.E. to buy marijuana, who then steered him to a marijuana seller, the D.A.'s Office charged her and S.E. on one criminal complaint with criminal sale and possession of marijuana. On information and belief, Defendants never arrested or charged the man who allegedly actually sold Defendant UC 218 marijuana that day.

23. On the basis of Defendant UC 218's fabrication of evidence, Ms. Williams was charged with possession and sale of marijuana on a complaint separate from a contemporaneous complaint against Jane Doe.  On information and belief, Defendant UC 218's made similar allegations against Jane Doe as he made against Ms. Williams.

24. Defendants Bocachica, Verdejo, Kavaney, Disimone and Ovando participated in the marijuana operation pursuant to which Defendant UC 218 made the false allegation against Ms. Williams. These Individual Defendants failed to intervene to stop Ms. Williams from being falsely arrested despite personal observations during the operation that she was not involved.

25. The state court dismissed the marijuana possession and sale charges against Ms. Williams at her arraignment.

26. Although Ms. Williams originally obtained an ACD, because the adjourned dismissal complicated her ability to return to work, causing her lost wages, she returned to the state court judge, who dismissed the charges outright.

27. Ms. Williams suffered damages as a result of Defendants' actions. Defendants unconstitutionally deprived Ms. Williams of her liberty, damaged her reputation, caused her loss of wages due to a work suspension, and caused her emotional trauma.

28. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

29. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals

and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

30. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

<u>Colon v. City of N.Y.</u>, Nos. 9 Civ. 8, 9 Civ. 9, 2009 WL 4263362, at *2 (E.D.N.Y. November 25, 2009).

31. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

32. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Ms. Williams's constitutional rights.

33. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

34. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

35. All of the aforementioned acts deprived Ms. Williams of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

36. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

37. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or

rule of the respective municipality/authority, which is forbidden by the United States Constitution.

38.     As a result of the foregoing, Ms. Williams is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

39.     Ms. Williams repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

40.     Defendants, by their conduct toward Ms. Williams alleged herein, violated Ms. Williams's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

41.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Ms. Williams of her constitutional rights.

42.     As a direct and proximate result of Defendants' unlawful conduct, Ms. Williams sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST

43. Ms. Williams repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

44. Defendants violated the Fourth and Fourteenth Amendments because they arrested Ms. Williams without cause.

45. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Ms. Williams of his constitutional rights.

46. As a direct and proximate result of Defendants' unlawful conduct, Ms. Williams sustained the damages hereinbefore alleged.

## THIRD CLAIM
## FABRICATION OF EVIDENCE/DEPRIVATION OF FAIR TRIAL

47. Ms. Williams repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

48. Defendants, by their conduct toward Ms. Williams herein alleged, fabricated evidence against her knowing that the evidence in question would likely influence a jury's decision, forwarded that information to prosecutors, and Ms. Williams suffered a deprivation of liberty as a result.

49. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malic and with the specific intent to deprive Ms. Williams of her constitutional rights.

## FOURTH CLAIM
## FAILURE TO INTERVENE

50. Ms. Williams repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

51. Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

52. Accordingly, Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments of the United States Constitution.

53. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Ms. Williams of his constitutional rights.

54. As a direct and proximate result of Defendants' unlawful conduct, Ms. Williams sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## MONELL CLAIM

55. Ms. Williams repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

56. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or

rule of the respective municipality/authority, which is forbidden by the United States Constitution.

57. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Ms. Williams's rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

58. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

59. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Ms. Williams's safety, well-being and constitutional rights.

60. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Ms. Williams as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Ms. Williams respectfully request the following relief:

A. An order entering judgment for Ms. Williams against Defendants on each of their claims for relief;

B. Awards to Ms. Williams for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, Sixth and Fourteenth Amendment rights of Ms. Williams, the amount to be determined at jury trial, which Ms. Williams respectfully demands pursuant to FRCP 38;

C. Awards to Ms. Williams of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Ms. Williams, the amount to be determined at jury trial, which Ms. Williams respectfully demands pursuant to FRCP 38;

D. Awards to Ms. Williams of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED: September 9, 2016
New York, New York

      /s                 
Ryan Lozar
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562
ryanlozar@gmail.com

*Attorney for Plaintiff*