UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RHONDA WILLIAMS,

                                                Plaintiff,

-against-

CITY OF NEW YORK, Police Detective RICARDO BOCACHICA, Shield No. 000919, Police Detective JOSH KAVANEY, Shield No. 370, Police Detective ANTHONY DISIMONE, Shield No. 340, Police Sergeant PATRICIO OVANDO, Police Officer UCO, Shield # 218, Police Detective VERDEJO (f/n/u), Police Officers JOHN/JANE DOES 1-5, individually,

                                                 Defendants.

No. 16 Civ. 233 (JPO)

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO ENFORCE THE TERMS OF THE PARTIES' RULE 68 SETTLEMENT, INCLUDING REASONABLE ATTORNEY'S FEES, EXPENSES AND COSTS

**The Law Office of Ryan Lozar, P.C.**
Ryan Lozar
305 Broadway, 10th Floor
New York, NY 10007
Telephone: 1-310-867-1562
Fax: 1-877-666-4456
ryanlozar@gmail

*Attorney for Plaintiff
Rhonda Williams*

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO ENFORCE THE TERMS OF THE PARTIES' RULE 68 SETTLEMENT, INCLUDING REASONABLE ATTORNEY'S FEES, EXPENSES AND COSTS

I. **Factual Summary**

What follows is a brief summation of relevant allegations and facts, compiled from the docket, discovery, and Ryan Lozar's First Fact Declaration with Exhibits 1 through 6. For the sake of brevity, I will assign names to Doe individuals and I will refer to Defendants collectively.[1]

a. **Defendants' Alleged Violation Of Ms. Williams's Fourth Amendment Rights**

On September 10, 2013, Plaintiff Rhonda Williams ("Plaintiff"), who is a fifty-year old woman who works at an assisted-living facility for adults with developmental disabilities, had the day off from work. At about 2:00 p.m., she was walking in her neighborhood when she ran into Jane, a woman with whom she had a light acquaintance. Jane was with a male friend named John. Ms. Williams and John had never met before.

They were all going in the same direction on Morris Avenue and they talked as they walked. There was a group of people in the yard as they passed 1125 Morris Avenue, and a foosball table, food and music, too. Ms. Williams knew one of the men in the yard and so she said hello to him. Meanwhile, Jane and John went to chat up someone who Jane knew deeper in the yard. Jane and John eventually reappeared and told Ms. Williams they were leaving. By this time Ms. Williams was ready to go, too, and so she told her friend goodbye and departed with Jane and John.

On the next corner, John went his own way, and Ms. Williams and Jane bade him farewell. Moments later, Defendant NYPD Officers converged upon Ms. Williams and Jane and arrested

---

[1] Ryan Lozar's Second Fact Declaration relating to his experience and fees is also submitted to the Court and will be referenced in the Analysis portion of this memorandum of law.

them. Ms. Williams was confused and Defendant NYPD Officers would only tell her that they were taking her to the precinct. Just then, Ms. Williams's acquaintance Jim walked by, and Ms. Williams asked the Defendant NYPD Officers if she could give Jim her telephone for safekeeping because she did not know what would happen to her property while in police custody. Defendant NYPD Officers had absolutely no problem with this and so Ms. Williams handed Jim her telephone as they looked on and gave their blessing.

The telephone incident is a strange aspect of this case because Ms. Williams later learned that John had been an undercover police officer, and that the Defendant NYPD Officers arrested her because John alleged that Ms. Williams had used her telephone to broker a marijuana buy for him at 1125 Morris Avenue. This was not true at all but, insofar as this was Defendant NYPD Officers' claimed basis for Ms. Williams's arrest, it made little sense that they so cheerily allowed Ms. Williams to hand over such central evidence to Jim, particularly because Defendants were disappointed that they failed to apprehend the person who allegedly sold the marijuana directly to John. It stands to reason that the fugitive marijuana dealer's telephone number would have been at the top of Ms. Williams's call register—if, as John alleged, she had used it to set up the whole sordid affair.

The dubious nature of Defendants' accusation against Ms. Williams is further underlined by the fact that John accused Jane of doing the exact same thing. It is implausible to think that Ms. Williams and Jane simultaneously and duplicatively telephoned 1125 Morris Avenue mere seconds before they all arrived to arrange the single middling marijuana sale that allegedly took place at that address.

After Ms. Williams spent approximately twenty-one hours incarcerated, a state court judge granted her an ACD at arraignment. What Ms. Williams did not know at the time she accepted

the ACD was that due to the fact that she worked with a vulnerable population of people, her employer had been alerted about her arrest the very second NYPD Defendants fingerprinted her after her false arrest. Ms. Williams was thereafter unable to work until she got the charge wholly dismissed and sealed. She was able to achieve this relatively quickly, but not before suffering economic injury.

### b. Procedural Background

On January 12, 2016, Ms. Williams filed her Original Complaint challenging her September 10, 2013, arrest. Docket No. 1.

On August 2, 2016, the Parties participated in Court-Ordered mediation after exchanging and analyzing substantial paper discovery. Docket Entry 8/4/2016; Lozar First Decl. ¶ 6.

The mediation was unsuccessful and the Parties proceeded to litigate. Lozar First Decl. ¶ 7. Among other things, the Parties conferred and developed a pretrial schedule to propose to the Court; Plaintiff served Defendants with her First Document Requests and Interrogatories; the Parties attended an initial conference with the Court, which set a pretrial schedule for the case; Plaintiff drafted a Proposed First Amended Complaint that named Doe Defendants and which conformed to the evidentiary record; the Parties continued to discuss with the mediator whether and to what extent another session would be useful; and Plaintiff served Defendants with supplemental disclosures. Lozar First Decl. ¶ 7.

### c. Defendants Served A FRCP 68 Offer Of Judgment, And Plaintiff Accepted

On September 12, 2016, Defendants served Plaintiff with a FRCP 68 offer. Lozar First Decl. ¶ 8, Exh. 1. The FRCP 68 offer stated that it allowed Plaintiff "to take a judgment against the City of New York in this action for the total sum of Ten Thousand and One ($10,001.00)

Dollars, plus reasonable attorneys' fees, expenses, and costs to the date of this offer for plaintiff's federal claims." Id.

On September 19, 2016, Plaintiff accepted Defendants' FRCP 68 offer of judgment in the amount of $10,001.00. Lozar First Decl. ¶ 9, Exh. 2.

### d. The Parties Dispute The Amount Of Plaintiff's Reasonable Attorney's Fees, Expenses And Costs

On or about September 29, 2016, Plaintiff served Defendants a detailed invoice specifying her fees and costs incurred in this matter through and including September 16, 2016, in the total amount of $10,863.80. Lozar First Decl. ¶ 12, Exh. 3. The September 29 invoice contained contemporaneous supporting time entries and it is presented to the Court in the form presented to Defendants. Id.

Defendants responded with an offer to pay $6,000.00 in fees and costs. Lozar First Decl. ¶ 13.

Defendants explained $6,000.00 offer by arguing, among other things, that: (1) Plaintiff had attributed a single time entry on the September 29 invoice to her attorney when she should have attributed it to a paralegal; (2) Plaintiff could not recover attorneys' fees for the 30 minutes she conferred with her counsel about the issuance of the FRCP 68 offer because that conference occurred after the FRCP 68 offer was made; and (3) Plaintiff's Counsel could have read Defendants' initial disclosures more quickly than the one hour and six minutes he claimed. Lozar First Decl. ¶ 14.

Plaintiff agreed as to Defendants' points about the paralegal and the FRCP 68 consultation items. Plaintiff disagreed that Defendants reasonably challenged the time he spent reading the initial disclosures, but agreed to reduce the time corresponding to that entry in the hope of lubricating settlement. Lozar First Decl. ¶ 15. On October 19, 2016, Plaintiff served Defendants

with an invoice reflecting these line-item amendments. Id., Exh. 4. The amended invoice specified her fees and costs in this matter for a total amount of $10,396.30. Id. An accompanying cover letter explained in detail the ways in which the amended invoice modified the September 29 invoice. Id., Exh. 5.

Defendants responded with an offer to pay Plaintiff $7,000.00 for her fees and costs, which represented a 33% reduction of Plaintiff's amended invoice showing fees and costs of $10,396.30. Lozar First Decl. ¶ 16.

Defendants explained their offer with roughly three arguments. Lozar First Decl. ¶ 17. It should be noted that Defendants made these arguments when challenging Plaintiff's September 29 invoice as well. Id. Defendants argued that: (1) Plaintiff's Counsel's rate should be $275.00 or $300.00 per hour, and not $400.00 per hour; (2) Plaintiff's paralegal rate should be $75.00 per hour, and not $125.00 per hour; and (3) Plaintiff's Counsel should not bill for the actual time he spent performing certain tasks. Lozar First Decl. ¶ 17. As to this last argument, by way of examples, Defendants objected to: (i) Plaintiff's Counsel taking two hours and twenty-four minutes to read nearly one-hundred pages of dense discovery (Defendants believed Plaintiff's Counsel should have done this in thirty minutes flat); (ii) Plaintiff's Counsel taking fifty-six minutes to draft an ex parte settlement statement for the mediator (Defendants would have allotted precisely thirty minutes for this, too); (iii) Plaintiff's Counsel spending two hours and eighteen minutes to draft detailed document requests and interrogatories tailored to this case (Defendants opined that Plaintiff's Counsel should have turned this around in eighteen minutes); and (iv) Plaintiff's Counsel spending one hour and six minutes to draft an amended complaint that conformed to the evidentiary record (Defendants suggested that thirty minutes would have been more appropriate). Id.

Plaintiff disagreed with each and every one of Defendants' objections to her amended invoice. Lozar First Decl. ¶ 18. Nonetheless, Plaintiff offered to accept $9,200.00, then $9,000.00, to settle the Parties' fees and costs dispute. Lozar First Decl. ¶ 19. Again, Plaintiff did not believe that Defendants' arguments had merit, but she was willing to accept a 12% to 13% reduction of her actual fees and costs to spare the Parties and the Court the tedium of motion practice. Id.

Defendants rejected Plaintiff's settlement proposal. Lozar First Decl. ¶ 20. Defendants reiterated their arguments and stated that $7,000.00—a nearly 33% reduction of Plaintiff's actual fees and costs—was their final settlement offer. Id.[2]

Plaintiff withdrew her reasonable settlement proposal and today files this motion for her fees and costs. Lozar First Decl. ¶ 21. With this motion, she also seeks her fees and costs related to making this motion, and respectfully requests that the Court permit her to file supplemental records in that regard at the same time she files a Reply in Support of the Motion. Id. However, at this writing, she has added the time it took Counsel to prepare this application to his declaration. Lozar First Decl. ¶ 22.

## II. <u>Legal Standard</u>

The "lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a 'presumptively reasonable fee.'" <u>Stanczyk v. City of N.Y.</u>, 752 F.3d 273, 284-85 (2d Cir. 2014) (citing <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011)).

---

[2] Plaintiff pointed out to Defendants that because they have a swirl of objections relating to attorney rate, paralegal rate and individual line items in the invoice, settlement of the fees and costs dispute does not require Plaintiff or Defendants to concede the other party's position on any one of these disputed metrics.

### III. Plaintiff's Attorney's Fees Are Reasonable

#### a. Counsel Spent A Reasonable Number Of Hours Litigating Plaintiff's Case

Plaintiff has shown that her Counsel spent a reasonable number of hours litigating her case by producing contemporaneous records that account for how her Counsel's time was spent. See N.Y.S. Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983); Lozar Fact Decl. ¶ 15, Exh. 4. Although Plaintiff contends that Counsel's time entries on the amended invoice provide the Court with "ample information to evaluate the reasonableness of the hours billed," Wilder v. Bernstein, 975 F. Supp. 276, 285 (S.D.N.Y. 1997), as discussed in Plaintiff's factual summary, supra, Defendants have told Plaintiff's Counsel that they are unwilling to accept that four of those entries reasonably reflect the amount of time that such tasks should take. The contested time entries are: (1) the two hours and twenty-four minutes that Counsel spent reviewing roughly one-hundred pages of paper discovery; (2) the fifty-four minutes that Counsel spent preparing an ex parte settlement statement for the Parties' Court-Ordered mediation; (3) the two hours and eighteen minutes that Counsel spent drafting Plaintiff's first document requests and interrogatories; and (4) the one hour and six minutes that Counsel spent amending Plaintiff's complaint to name Doe Defendants and to confirm the pleading to the evidence just prior to the expiration of Plaintiff's statute of limitations. Lozar Fact Decl. ¶ 15, Exh. 4 (June 21, 2016, July 27, 2016, August 22, 2016, and September 4, 2016 entries). Defendants suggested to Plaintiff's Counsel that it would have been more proper if he had spent thirty minutes on each of those tasks—with the exception of drafting discovery requests, which Defendants allege should have taken at most eighteen minutes. Id.

Plaintiff argues that Defendants' time entry suggestions are nothing more than a pronouncement of an arbitrary amount that Defendants would like to pay Plaintiff for fees and

costs, as opposed to her actual fees and costs. As a result, Defendants' time entry suggestions fail to raise a "colorable challenge to the veracity" of Counsel's time sheets. U.S. v. Gupta, 925 F. Supp.2d 581, 587 (S.D.N.Y. 2013). For example, even a cursory review of Plaintiff's document requests and interrogatories disprove the idea that they were written in eighteen minutes, or that they could have been. See Lozar First Decl. ¶ 17, Exh. 6 (citing to specific BATES numbers in existing production and asking Defendants to build upon evidence appearing therein, see, e.g., Interrogatories 8-9, Document Requests 5-6, 9-10, 14, 20-21); id. (asking for additional information about case-specific issues revealed in first production, see, e.g., Docket Requests 8, 14-15, 19, 32).

In light of Defendants' unrealistic ideas, one has to wonder about their broader motivations in suggesting that Counsel should have limited himself to such rushed, anemic advocacy. It stands to reason that if all plaintiffs' lawyers were held to Defendants suggestion that they spend only a bare minimum amount of time preparing their clients' cases, Defendants' adversaries could eventually devolve into a corps of relative dupes. Such milquetoast advocates can hardly be the kind of counsel that a civil rights plaintiff would want on her side in an adversarial system. Yet courts have said that in weighing whether an attorney's fees are reasonable, a court must "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Schoolcraft v. City of N.Y., No. 10 Civ. 6005 (RWS), 2016 WL 4626568, at *5 (S.D.N.Y. Sept. 6, 2016) (citing Arbor Hill, 522 F.3d at 190) (emphasis added).[3]

---

[3] American society benefits generally when the system encourages a strong plaintiff's bar, as a civil rights plaintiff acts as a "private attorney general, vindicating a policy that Congress considered of the highest priority." Fox v. Vice, 563 U.S. 826 (2011) (citations & quotations omitted).

### b. Counsel's Hourly Rate Is Reasonable

Next, Plaintiff's Counsel's hourly rate of $400.00 is reasonable. In determining whether an attorney's hourly rate is reasonable, under the "forum rule," courts look to "the hourly rates employed in the district in which the reviewing court sits." Simmons v. N.Y.C. Trans. Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). A plaintiff bears the burden of producing satisfactory evidence, which may include case law of which a court may take judicial notice, "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Samms v. Abrams, -- F. Supp.3d --, No. 15 Civ. 2741 (JSR), 2016 WL 4045473, at *4 (S.D.N.Y. July 28, 2016).

"The district court must determine a reasonable hourly rate for plaintiff's attorneys, defined by [the Second Circuit] as the rate that a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2007). "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors." Schoolcraft, 2016 WL 4626568, at *5 (citing Arbor Hill, 522 F.3d at 190).[4]

At the outset, Plaintiff would like to address an argument that Defendants made in the Parties' negotiations leading up to this motion, and which Plaintiff expects they will repeat here,

---

[4] The Johnson factors come from a Fifth Circuit case of the same name and include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

which is that Counsel should slash his rate because this case was so simple. Although Plaintiff vigorously contests the premise that her Section 1983 litigation was simple (I will discuss this below), Defendants' argument is in any event one that goes to the reasonableness of the number of hours an attorney expends on a case, not on the hourly rate that he charges to litigate it. See Marano v. Aaboe, No. 05 Civ. 9375 (BSJ) (RLE), 2007 WL 3195156, at *4 (S.D.N.Y. Oct. 29, 2007) (reducing a time entry from sixteen hours to three hours for motion to compel that did not require complex legal analysis). This is because Counsel's "experience—a factor supporting the rate—undoubtedly allowed him to proceed as expeditiously and efficiently as he did here and to expend fewer hours than a less experienced attorney would have required." Mariani v. City of N.Y., No. 12 Civ. 288 (NG) (RML), 2013 WL 11312399, at *1 (E.D.N.Y. July 1, 2013). If Ms. Williams had retained a recently-minted attorney rather than Counsel, then logic holds that that attorney's time sheets—who may have billed the $275.00 that Defendants seem to believe all attorneys should charge—might have needed extra time to perform every single task because they were educating themselves along the way.[5]

Plaintiff also contends that Counsel's requested rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Samms, 2016 WL 4045473, at *4. Recently, in Watkins v. Smith, No. 12 Civ. 4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015), the Court held that "fee rates for

---

[5] In fact, in light of Plaintiff's opinion about the extreme reasonableness of her Counsel's time entries on the invoice under study, Plaintiff submits that the extremely lean time entries on her Counsel's invoice stand as a strong exhibit in support of the reasonableness of Counsel's requested rate when viewed together with his declaration detailing his past professional experience and compensation while in private practice. Cf. Hines v. 1025 Fifth Avenue Inc., No. 14 Civ. 3661 (SAS), 2015 WL 4006126, at *4 (S.D.N.Y. June 30, 2015) (reducing an attorney's fee to $350.00 per hour because, among other things, he had overlitigated his case and failed to exercise billing discretion, both of which were mistakes that a more experienced attorney may not have made).

experienced attorneys in small firms generally range from $250 to $450 in civil cases." In <u>Bailey v. Pataki</u>, No. 08 Civ. 8563 (JSR), 2016 WEL 3545941, at *6 (S.D.N.Y. June 16, 2016), the Court specifically weighed several attorneys' hourly rates in the context of a Section 1983 action and awarded an hourly rate of $550.00 for attorneys Jeffrey Rothman, Ameer Benno and Reza Rezvani. Mssrs. Rothman, Benno and Rezvani graduated from the University of Pennsylvania Law School in 2001, Cornell University Law School in 2002 and Hofstra University School of Law in 2001, respectively. I mention these attorneys' law school graduation dates only to establish that they are Counsel's rough contemporaries.

Perhaps obviously, the precise contours of my and these other attorneys' legal work experience over the course of the ensuing thirteen to fifteen years varies greatly if the Court were to look at everyone side by side, which renders it difficult if not impossible to rank the value of each person's collective experience against the others' with any real precision. Even still, I think it might be useful to start with Mssrs. Benno, Rothman and Rezvani's $550.00 rate in <u>Bailey</u> because my $400.00 per hour rate departs so sharply downward from it.

First, I must recognize that in significant part, my requested hourly rate is $150.00 lower than those attorneys' because the <u>Bailey</u> plaintiffs, who were not the most sympathetic parties to a jury, rendered the case less desirable than most to the Section 1983 plaintiff's bar. This is a <u>Johnson</u> factor that weighs in favor of my rate here being lower than theirs in <u>Bailey</u>. At the same time, and here I begin to argue the <u>Johnson</u> factors relative to other attorneys as well, it should be noted that Ms. Williams's case involved undercover officer discovery, which is commonly understood to be a difficult area of Section 1983 discovery that some attorneys with little experience might like to avoid. And so in this respect the tenth <u>Johnson</u> factor justifies my requested hourly rate to the extent it falls higher on the <u>Watkins</u> scale.

Furthermore, I must acknowledge in light of the length of the <u>Bailey</u> litigation that Mssrs. Benno, Rothman and Rezvani invested more "time and labor" into it than I did here, and so the first <u>Johnson</u> factor weighs in favor of my requesting the lower rate that I do. At the same time, and again, although the first factor may mean that I am not in <u>Bailey</u> territory, I argue that it supports the hourly rate I do seek because the lean amount of time and labor my firm expended on the case is a testament to "greater economies in attorney time" than might have been achieved with different staffing. Cf. <u>Schoolcraft</u>, 2016 WL 4626568, at *9 (justifying a reduction in hourly rate because of a wasteful approach to staffing).

At this point I will abandon the <u>Bailey</u> comparisons altogether. <u>Johnson</u>'s second and third factors, which ask about "the novelty and difficulty of the questions" and "the level of skill required to perform the legal service properly" support my $400.00 rate. As I already mentioned, I disagree with Defendants that this was a simple case. For example, Plaintiff's Counsel was on his way to building an evidentiary record to support motion practice for undercover officer discovery; to support motion practice to unseal Plaintiff's co-arrestee's records; to clearly depict the inconsistency of Defendants' allegations that Ms. Williams and Jane committed identical criminal acts simultaneously and duplicatively (which allegations were conveniently sworn on separate criminal complaints, presumably because they would have looked nonsensical on the same charging instrument); to argue that even assuming, <u>arguendo</u>, that Defendants could convince a jury that some version of their story were true, the steering accusation against Ms. Williams stood on wobbly probable cause in light of the many admitted degrees of social separation between her and the individual who allegedly, ultimately offered to sell John a small amount of marijuana; and more.

Furthermore, Plaintiff contends that Defendants' argument about the simplicity of the case makes little sense given the history of this case. If this case were so simple, then Defendants would have been sensible to settle it during the Court-Ordered mediation regardless of their adversary's prowess to avoid the needless accrual of attorneys' fees at any hourly rate. Yet Defendants insisted at the mediation that Plaintiff could only hope to recover a very, very small percentage of what she eventually obtained in the FRCP 68 offer. Given how far Plaintiff's recovery advanced between the date of the mediation and the FRCP 68 offer, it is reasonable to infer that her attorney litigated the case in a way that allowed Defendants to realize that they would not be able to bluff Plaintiff into taking a trifle of a settlement.

Courts have held that the fourth Johnson factor—the preclusion of other employment—is one that weighs heavily in favor of a solo practitioner's requested hourly rate. My customary hourly rate also supports the requested rate. As stated in my attached declaration, my hourly rate was formulated not only in reference to attorneys who are my reasonable comparators in the market that is the Southern District; it was also formulated in reference to the $490 and $510 hourly rate that I have billed clients in the past, as well as the Court's finding that my lodestar was fair and reasonable in Vasquez. Perhaps obviously, I billed the $490 and $510 when I was working at a large law firm in New York City, and the firm's overhead was built into my hourly rates and those of all of the firm's lawyers. Even still, the fact remains that my "experience, reputation, and ability" from 2007 until 2009 were such that that was a reasonable hourly rate for the market to bear nearly a decade ago. Today, some seven, eight and nine years later, and after gaining many more years of attractive legal experience as a federal prosecutor and a federal law clerk, it is logical to conclude that my "experience, reputation and ability"—which go to the ninth Johnson factor— have improved exponentially since that earlier era such that the market will still bear a significant

hourly rate for my services. Yet I am billing at a significantly lower hourly rate from 2009, as I must, in recognition of the natural fact that as a solo practitioner I have less overhead than a large law firm. See Finch v. New York State Office of Children and Family Services, 861 F. Supp.2d 145, 153-54 (S.D.N.Y. 2012). At the same time, it should be noted that the Finch Court also pointed out that the fact of my solo practice will also buoy my hourly rate from slipping too far in the other direction due to the value it affords clients. As the Finch Court recognized, there was "something to be said for solo practioners and very small firms that avoid the often duplicative billing that is found when junior and senior attorneys work together." Id. at 154.

On the subject of Counsel's experience, during the Parties' attempt to negotiate this fee petition, Defendants simply refused to acknowledge that the market would value it enough to permit a $400.00 per hour rate. Defendants' point, it seems, is that if an individual had $400.00 per hour to pay an attorney to litigate a Section 1983 claim for her could choose between Mr. Lozar and another attorney who had only ever practiced Section 1983 law from the moment of law-school graduation until the present day, she could only make one reasonable choice, and that choice would not be Mr. Lozar. Taken to its illogical end, Defendants' argument means that absolutely nothing but Section 1983 law is relevant to the practice of Section 1983 law. This ignores that Section 1983 is an area of the law that intersects with many others and that a Section 1983 practice benefits when an attorney has knowledge about how those other legal areas operate.

It is hard to imagine any reasonable client not assigning significant value to the unique professional experiences and skills that are described in my affidavit. First, it is misleading to say that the first time I began to immerse myself in Section 1983 law was the day in 2015 that I opened a solo practice. The five years I spent clerking for federal judges count for a great deal in that regard, in light of the number of Section 1983 cases on federal dockets. At the same time, my

immersion in federal civil procedure during those many years working for the federal judiciary are not "wasted years" as Defendants would argue. To the contrary: The expertise I built while working for the federal judiciary redounds to the great benefit of my clients on a daily basis.

Similarly, the time I spent working as a federal prosecutor permitted me a robust vocabulary in and knowledge of substantive and procedural criminal law, not to mention trial practice. It is axiomatic that substantive and procedural criminal law figure greatly in any civil rights case and, as a result of my work as a prosecutor, I have a solid foundation in both.

In summary, I believe that my requested rate is supported in the marketplace for all the reasons stated herein. I believe that a reasonable person with the means to pay an attorney $400.00 per hour to litigate her Section 1983 claim would reasonably believe, knowing the quality of the legal services I provided in this case and the reasonable amount of time I took to provide them, that I would effectively litigate her case as well for the minimum amount necessary. See Schoolcraft v. City of N.Y., No. 10 Civ. 6005 (RWS), 2016 WL 4626568, at *5 (S.D.N.Y. Sept. 6, 2016) (citing Arbor Hill, 522 F.3d at 190) (emphasis added).

### IV. Plaintiff's Paralegal Fees Are Reasonable

The Court may notice that although Plaintiff established my applicable experience in seeking reasonable attorneys' fees, she has not presented corresponding information relating a paralegal. That is because I performed the services that are billed at a paralegal rate on the amended invoice. Lozar First Decl. ¶ 12, Exh. 3; id. ¶ 15, Exh. 4. In Samms, the Court endorsed an award to lead counsel for work that could have been done by associates or clerical staff. Samms, 2016 WL 4045473, at *6. The Court did "not consider the tasks challenged by defendant, such as filing motions, to be inappropriate for an attorney to perform, particularly in a situation of a very small firm that lacks the support services of a large firm." Id.

Here, Plaintiff requests that the Court apply Samm's logic and consider Counsel's experience to provide a foundation for the paralegal rate. See Lozar Exp. Decl., passim. Indeed, Plaintiff does not even seek paralegal services at an attorney's rate as Samms suggests might be permissible within reason. Instead, Plaintiff seeks to compensate her Counsel only at a $125 per hour paralegal rate, which she contends is reasonable. In Munoz v. Manhattan Club Timeshare Ass'n, Inc., 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014), the Court noted that the Southern District sees paralegals reasonably bill between $75.00 and $200.00 per hour, then allowed an attorney who performed paralegal services for his client a $150.00 hourly rate, finding "[his] work . . . at least as valuable as a paralegal—and probable more valuable." Plaintiff argues that the Court's reasoning in Munoz supports her request here, as having one able and learned person handling all of a litigation's moving parts inspires greater confidence than a division of labor. See Sanguineti v. Boqvist, 2016 WL 1466552, at *4 (S.D.N.Y. Apr. 14, 2016) (approving as "reasonable in context" an attorney's requested $129.00 hourly paralegal rate for paralegal work she performed for her solo practice); Nat'l Ass'n for Speciality Food Trade, Inc. v. Construct Data Verlag AG, No. 04 Civ. 2983 (DLC) (KNF), 2006 WL 5804603 (S.D.N.Y. Dec. 11, 2006), report and recommendation adopted, No. 04 Civ. 2983 (DLC), 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007) (finding $200.00 a reasonable hourly rate for the work performed by a senior paralegal").

Just as Plaintiff argued, supra, that her Counsel's hourly rate's reasonableness was informed, in part, by the leanness of his billing, Plaintiff also argues that the $125.00 hourly rate for paralegal services is so justified. See New York Youth Club v. Town of Harrison, No. 12 Civ. 7534 (CS), 2016 WL 3676690, at *6 (S.D.N.Y. July 6, 2016) (knocking the plaintiff's paralegal rate down to $100.00 per hour while slashing certain paralegal time entries by half).

16

## V. Attorneys' Fees For The Preparation Of The Fee Application Are Compensable

Finally, and very briefly, Plaintiff respectfully requests that the Court permit her to recover attorneys' fees for the preparation of this fee application, which courts have held to be compensable. See Samms, 2016 4045473, at *7 (citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)). I have included a brief entry in my first declaration of fact relating to the number of hours I spent preparing this fee application.

## VI. Conclusion

In light of the foregoing, Ms. Williams respectfully requests that the Court grant her motion for reasonable attorneys' and paralegal fees and costs.

Dated:       October 31, 2016
               New York, New York

/s/ *[signature]*
RYAN LOZAR, ESQ.
The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562