UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
RHONDA WILLIAMS,

                                Plaintiff,

                         -against-

CITY OF NEW YORK, Police Detective
RICARDO BOCACHICA, Shield No. 000919,
Police Detective JOSH KAVANEY, Shield No.
370, Police Detective ANTHONY DISIMONE,
Shield No. 340, Police Sergeant PATRICIO
OVANDO, Police Officer UCO, Shield # 218,
Police Detective VERDEJO (f/n/u), Police
Officers JOHN/JANE DOES 1-5, individually,

                                Defendants.
---------------------------------------------------------------- x

**DECLARATION OF RYAN LOZAR RELATING TO EXPERIENCE AND RATE**

No. 16 Civ. 233 (JPO)

**RYAN LOZAR**, an attorney duly admitted to the Bar of this Court, declares, under penalty of perjury, the following to be true:

1. I am a member of The Law Office of Ryan Lozar, P.C. ("Firm"). The Firm represents Plaintiff Rhonda Williams in this action.

2. I submit this Declaration in support of Plaintiff's motion for costs and fees pursuant to Fed. R. Civ. P. 68, 42 U.S.C. § 1988, and the Court's recent Scheduling Order, and otherwise to enforce the Parties' FRCP 68 settlement.

1

3.  I am a member in good standing of the bar of New York (admitted January 2005). I am also a member of the bar of California, although I have gone on inactive status there as I presently practice exclusively in New York.

4.  I am also admitted to the bar of many federal courts, including the United States District Court for the Southern District of New York.

**Education**

5.  In 2003, I graduated from Georgetown University Law Center in Washington, D.C., with a Juris Doctor Degree.

6.  From 1999 to 2000, I completed graduate work at the Universidad de Alcalá de Henares in Alcalá de Henares, Spain.

7.  In 1999, I graduated from Cleveland State University in Cleveland, Ohio, with a Bachelor in Business Administration.

**Hourly Rates**

8.  In the context of my solo practice, which I began in 2015, my clients have exclusively retained me on a contingency basis. In recent Fair Labor Standards Act ("FLSA") case I settled for nine clients I submitted my lodestar to the Court for Cheeks fairness review which had been calculated using my $400.00 hourly rate. See Vasquez, et al., v. Fast Labor Inc., et al., No. 16 Civ. 2163 (WHP), Docket No. 67. The Court approved the settlement as fair and reasonable. Docket No. 69.

9. When I worked as a litigation associate for Kramer Levin Naftalis & Frankel, which I describe in greater detail, infra, clients were billed and they paid $490.00 per hour for the legal services I performed for them in 2007 and 2008. Later, in 2009, my clients were billed and they paid $510.00 per hour for my legal services.

**Work Experience**

10. In 2015, I started my own law practice, The Law Office of Ryan Lozar, P.C., in New York, New York, focusing roughly 90% of my practice on the litigation of cases brought under 42 U.S.C. § 1983. In the Southern District of New York and the Eastern District of New York I have been counsel of record in roughly thirty (30) Section 1983 litigations. My work includes, but is not limited to, briefing and arguing dispositive motions and discovery motions; participating in mediations; negotiating settlements; taking and defending depositions; investigating facts and claims; and more. In addition, I have shepherded many clients through New York City's Notice of Claim process and settled their claims directly with the City Comptroller's Office without having to file any litigation at all. Although my clients largely retain me on a contingency basis, in a Fair Labor Standards Act ("FLSA") case I settled for nine clients I submitted my lodestar to the Court for Cheeks fairness review which had been calculated using my $400.00

hourly rate. See Vasquez, et al., v. Fast Labor Inc., et al., No. 16 Civ. 2163 (WHP), Docket No. 67. The Court approved the settlement as fair and reasonable. Docket No. 69.

11.     From 2012 until 2015, I worked as judicial law clerk to the Honorable Vera M. Scanlon at the United States District Court for the Eastern District of New York in Brooklyn, New York. I regularly worked on substantive and procedural matters relating to Section 1983 cases during my three years as Judge Scanlon's law clerk. During my tenure as her law clerk, Judge Scanlon regularly maintained a docket of between three hundred to four hundred cases. As was true for the Eastern District generally, a significant portion of these were Section 1983 cases.[1] (As discussed, infra, I worked as a federal judicial law clerk for five years

---

[1] To provide an extremely rough-and-tumble idea of the prevalence of Section 1983 cases on the United States District Court for the Eastern District of New York's docket, and thus in my work as a judicial law clerk during those three years, the federal judiciary reported that between June 30, 2014, through June 30, 2015, roughly 1,924 of the 6,582 private civil litigations initiated in the United States District Court for the Eastern District of New York were civil rights litigations (including prisoner civil rights litigations). This constitutes roughly 30% of the civil litigations filed during that one-year time frame. See Table C-3, U.S. District Courts—Civil Statistical Tables for the Federal Judiciary (June 30, 2015), available at http://www.uscourts.gov/statistics/table/c-3/statistical-tables-federal-judiciary/2015/06/30 (last accessed Oct. 31, 2016).

4

altogether, as I also clerked for two years for a Federal District Judge prior to my three years of service to Judge Scanlon.)[2]

12. From 2011 until 2012, I worked as a Special Assistant United States Attorney for the U.S. Attorney's Office for the Southern District of California in San Diego, California. In this capacity, I represented the United States in all aspects of federal crimination prosecution. While on periodic general-crimes duty I represented the United States at hundreds of arraignments, bail hearings, bail revocation hearings, supervised release revocation hearings, change of plea hearings, and more. I made a formal appearance on behalf of the United States in approximately thirty-six prosecutions for which I assumed greater long-term responsibility. I co-chaired two felony jury trials to verdict. See U.S. v. Esparza, No. 11 Crim. 1451 (MMA) (2012); U.S. v. Dominguez-Garcia, No. 11 Crim. 5121 (MMA) (2012). I prepared for many other trials involving benefits fraud, drug and human smuggling, counterfeiting and illegal immigration, but these were obviated by late-stage plea agreements. My preparations in this regard included working

---

[2] The prevalence of Section 1983 cases on the District of Puerto Rico's docket is similarly heavy. The federal judiciary reported that between June 30, 2014, and June 30, 2015, roughly 20% of the civil litigations filed in the District of Puerto Rico were civil rights litigations (including prisoner civil rights litigations). See Table C-3, U.S. District Courts—Civil Statistical Tables for the Federal Judiciary (June 30, 2015), available at http://www.uscourts.gov/statistics/table/c-3/statistical-tables-federal-judiciary/2015/06/30 (last accessed Oct. 31, 2016)

with federal law enforcement agencies to develop and execute investigations; deposing undocumented material witnesses detained in criminal matters (in the event they could not be paroled back into the United States at the moment of a criminal jury trial); conducting grand jury presentations; drafting and arguing motions in limine; drafting search warrant applications, sentencing materials, appeals and post-conviction relief memoranda. In addition, I successfully briefed and argued an appeal before the United States Court of Appeals for the Ninth Circuit which defended a district judge's application of a "substantial risk of serious bodily injury" sentencing enhancement to a convicted human trafficker. See U.S. v. Rivera, 11-50097 (9th Cir. July 12, 2012). Finally, during this general period when I worked as a federal prosecutor, I published various articles on the subject of criminal law. See Tattoos As Testimony: Fair Trial And Fifth Amendment Considerations, California Lawyer Magazine, Jan. 2012, at 42; The Constitutional And Statutory Right To Self-Representation In Federal Probation Hearings, Los Angeles Lawyer Magazine, Apr. 2011, at 15.

13. From 2009 until 2011, I worked for Asylum Access Ecuador in Quito, Ecuador, then CEJIL (Centro por la Justicia y el Derecho Internacional) in Buenos Aires, Argentina. Among other things, I represented Colombian asylum seekers in Ecuador in immigration and anti-discrimination matters; I brought claims before various government ministries against Ecuadorian employers, schools, police and

banks; and I prepared briefs against South American governments facing charges under the American Convention on Human Rights.

14. From 2007 until 2009, I worked as a mid-level litigation associate for Kramer Levin Naftalis & Frankel in New York, NY. I served as the lead associate on a corporate governance litigation alleging self-dealing and breach of fiduciary duty (and on a subsequent state criminal investigation). In this capacity I wrote substantive legal memoranda, managed a discovery team of seven associates and staff attorneys, and coordinated directly with the client. I also was part of a long-term team developing a client's response to a federal criminal mortgage-backed securities fraud investigation. For this project I drafted a presentation compiling historical data on non-prosecution agreements arising from corporate cooperation with government investigations, and I was heavily involved in related discovery efforts. Clients were billed and they paid $490.00 per hour for the legal services I performed for them in 2007 and 2008, then they were billed and they paid $510.00 per hour for the legal services I performed for them in 2009.

15. From 2005 until 2007, I worked as judicial law clerk to the Honorable José Antonio Fusté at the United States District Court for the District of Puerto Rico in San Juan, Puerto Rico. In the District of Puerto Rico, Section 1983 litigations are a robust part of the Court's docket due to the island's famously

volatile political environment. As a result, during my two years working for Judge Fusté, I worked on many substantive and procedural matters arising from Section 1983 litigations. In fact, the experience piqued my interest in this area of the law enough that I later wrote, and the Interamerican University of Puerto Rico Law Review published, an article on First-Amendment protections against First-Amendment retaliation Section 1983 jurisprudence. See Del Valle Group v. Puerto Rico Ports Authority: First Time Contract Bidders and First Amendment Protection Against Speech And Political Affiliation Retaliation, 45 Rev. Jurídica U. Inter. P.R. 351 (2011).

16. From 2004 until 2005, I worked for the Reporters Committee for Freedom of the Press ("RCFP") as their Jack Nelson Legal Fellow. This fellowship is one of only three fellowships that the organization awards to newly-graduated law students each year. As RCFP's Jack Nelson Legal Fellow, I focused my work on federal and state freedom of information issues. I wrote amicus briefs for submission to various courts weighing freedom of information issues; convinced news organizations to join the briefs; and negotiated the briefs' final content with the various signatories before filing. See, e.g., ACLU v. Dep't of Defense, 389 F. Supp.2d 547 (S.D.N.Y. 2005) (regarding whether redacted photographs and videos relating to detainee treatment were exempt from disclosure); Director, Dep't of Info. Tech. of the Town of Greenwich v. Freedom

of Information Comm'n, 274 Conn. 179 (2005) (regarding state freedom of information law exceptions' application to geographic information system data); East Bank Special Serv. Fire Prot. Dist. v. Crossen, No. 04 Civ. 838 (La. App. 5 Cir. 2004) (regarding state open records law's application to an assistant fire chief's personnel file).

17. During the general time period that I worked for RCFP, I published various articles on the subject of freedom of information law. See, e.g., Federal Secrecy And The States: The Impact Of Information Closures On Government Operations, Ohio State U. Journal of Law and Policy for the Information Society, 2 ISJLP 103 (2006); A Records Roadmap: Journalists Struggle To Gain Access To Geographic Information System Data, New Media and the Law, Summer 2005, at 25; Fortified FOI: How Making Open Records Provisions Part Of A State Constitution Can Lead To Stronger Open Government Laws And Fewer Exemptions, New Media and the Law, Winter 2005; Shifting The Burden: The FOI Reform Bill And Attorney-Fee Shifting, News Media and the Law, Spring 2005.

18. From 2003 until 2004, I worked in NBC Universal's Litigation Department in New York, New York, where I contributed to litigations relating to freedom of information, employment, contract and bankruptcy disputes.

**Publications, Speaking Engagements And Memberships**

19. In 2012, I gave a presentation at the National Conference of State Liquor Administrators' annual meeting in Washington, DC, relating to regulatory issues arising from alcohol e-commerce. The NCSLA invited me to give the presentation in response to a paper I wrote and published with the Center for Alcohol Policy. See Whatever Happened To Toward Liquor Control? Access, Abuse And The Problem Of Direct Shipment.

20. As discussed, supra, I have published many articles relating to, among other subjects, Section 1983 law, federal and state criminal law and freedom of information law. See Tattoos As Testimony: Fair Trial And Fifth Amendment Considerations, California Lawyer Magazine, Jan. 2012, at 42; The Constitutional And Statutory Right To Self-Representation In Federal Probation Hearings, Los Angeles Lawyer Magazine, Apr. 2011, at 15; Del Valle Group v. Puerto Rico Ports Authority: First Time Contract Bidders and First Amendment Protection Against Speech And Political Affiliation Retaliation, 45 Rev. Jurídica U. Inter. P.R. 351 (2011); Federal Secrecy And The States: The Impact Of Information Closures On Government Operations, Ohio State U. Journal of Law and Policy for the Information Society, 2 ISJLP 103 (2006); A Records Roadmap: Journalists Struggle To Gain Access To Geographic Information System Data, New Media and the Law, Summer 2005, at 25; Fortified FOI: How Making Open Records

Provisions Part Of A State Constitution Can Lead To Stronger Open Government Laws And Fewer Exemptions, New Media and the Law, Winter 2005; Shifting The Burden: The FOI Reform Bill And Attorney-Fee Shifting, News Media and the Law, Spring 2005; Equal Protection Review, Georgetown U. Journal of Gender and the Law, 3 Geo. J. Gender L. 141 (2002).

21. I am a member of the Federal Bar Council, the New York City Bar Association and the New York County Lawyers' Association.

22. From 2012 until 2015, I served on the New York City Bar Association's LGBT Rights Committee.

23. From 2013 until the present, I have been a part of the Federal Bar Council's Inns of Court. In connection with that membership I have participated in four CLE presentations. They are: Ulysses: Everything You Ever Wanted To Know About Sex And The Law But Were Afraid To Task (Oct. 2016); All This, And A Chicken Farm, Too? The True Story Of Accidental World War II Double Agent William Sebold (Oct. 2015); What Is Art? The Inn-Tiques Roadshow—Art As A Matter Of Law Edition (Feb. 2015); This Train Ain't Bound For Glory: Plessy v. Ferguson (Nov. 2013).

DATED: October 31, 2016
New York, New York

/s/ Ryan Lozar
_____
Ryan Lozar
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562

To:  ACC Katherine Byrns, Esq. (by hand and ECF)
     Office of Corporation Counsel
     100 Church Street
     New York, NY 10007